## BLAYLOCK v. SHEFFIELD RUBBER PRODUCTS CORPORATION et al.

### No. 2757.

Court of Civil Appeals of Texas. El Paso.
Jan. 5, 1933.

Rehearing Denied Jan. 19, 1933.

McBride, O'Donnell & Hamilton and J. L. Lipscomb, all of Dallas, for appellant.

W. R. Herring and Robert Ogden, both of Dallas, for appellees.

PELPHREY, C. J.

Appellant sued Sheffield Rubber Products Corporation and R. E. Thompson, receiver of the corporation, to recover the balance due upon a certain promissory note which he alleged the defendant corporation had assumed to pay.

The parties will be designated as in the trial court.

Prior to the filing of this suit and after the note herein sued upon had become due, the 101st district court appointed R. E. Thompson receiver for the Sheffield Rubber Products Corporation of Dallas, Tex. The note was secured by a deed of trust on the corporation's factory site. Plaintiff was not a party to the receivership suit and did not intervene therein. While the receivership was pending, plaintiff posted the property for sale under the deed of trust; the date of sale being fixed on December 2, 1930. On the day previous to the sale the receiver obtained a temporary injunction from the 101st district court restraining the sale. On the following day the court dissolved the injunction and the sale was held. Plaintiff bought the property in for $20,000, and

has brought this suit seeking a deficiency judgment.

Defendants answered by general demurrer; general denial, and specially pleaded that the note sued upon had been paid off in full about December 2, 1930. In support of the plea of payment, they alleged that the temporary injunction was dissolved upon the agreement of the parties that the property should be sold by plaintiff to satisfy his lien and that he would expressly release the defendants from any further liability arising by virtue of the note and lien, and that he would accept the proceeds of the sale as full and complete accord, satisfaction, acquittance, and release of all his claim against defendants arising out of the note and lien.

They further pleaded that in addition to the above agreement the parties with the approval of the judge of the 101st district court entered into a written agreement whereby plaintiff agreed to accept the foreclosure sale of the property as a complete satisfaction and discharge of his claim on the note and lien. This agreement was attached to the petition and reads:

"This agreement entered into by and between L. Blaylock and R. E. Thompson, receiver of the Sheffield Rubber Products Corporation, witnesseth:

"1. Blaylock is the owner of a first, valid and enforceable lien in the principal sum of $22,500.00, evidenced by a note dated December 1st, 1922, due five years after date, payable to the order of F. R. Perkins, and executed by R. H. Dillon and Lula K. Dillon, and secured by a lien against a tract of land 98 feet by 150 feet, bounded on the south by Davis street, on the west by Tyler and on the North by Foreaker Street, and being the southwest end of Block No. 3108. according to the official map of the City of Dallas, and being more particularly described in the application for injunction heretofore filed by R. E. Thompson, receiver, and;

"Whereas, R. E. Thompson, receiver for the Sheffield Rubber Products Corporation, has heretofore had issued a writ of injunction restraining L. W. Blaylock, Louis Blaylock and F. R. Perkins, from selling the above described real estate in satisfaction of said note and liens, and in order to compromise the difference between the parties hereto, this agreement witnesseth:

"1. It is hereby agreed that said writ of injunction be, and the same is hereby dissolved with the consent of the court.

"2. That the trustee's sale scheduled for Tuesday, December the 2nd, 1930, may be held.

"3. The trustee's deed to be executed by reason of said sale is to be withheld from record until January the 26th, 1930.

"4. That the receiver, R. E. Thompson, shall remain in possession of the property until said date and shall have full and complete control as heretofore.

"5. That the said R. E. Thompson, Receiver, shall have the right to sell said real estate for such sum as may be approved by the court, and for sufficient, at least, to satisfy the first lien. The first proceeds of said sale to go towards the liquidation of the first lien.

"6. Upon sale by R. E. Thompson during the hereinabove mentioned period of time, the undersigned, L. Blaylock, his heirs and attorneys agree to surrender the unrecorded Trustee's deed to the receiver, and if requested, to execute a quit-claim deed to said property.

"7. The receiver shall use all diligence to secure an order of the 101st Judicial District Court directing the payment of the balance due on checks received from the insurance company for the damages to the building by the fire, and if said order is entered then said receiver shall apply such sum to the taxes now due and the property as far as said sum will go.

"8. It is further agreed that the said receiver, in handling said property, is not to be interfered with by anyone, but said receiver shall have the privilege of consulting the owner of the note as to such sale, if the receiver sees fit to so consult said owner.

"Executed in triplicate this the 2nd day of December, A. D. 1930, and approved by the Judge of the 101st Judicial District Court."

The case was submitted to the jury upon the following special issue: "Do you find and believe from a preponderance of the evidence that the plaintiff expressly agreed with the defendant on December 2nd, 1930, that if the plaintiff be allowed to make the foreclosure sale as advertised for that date, that the plaintiff would accept the purchase price obtained at said sale in full and complete accord, satisfaction, acquittance and release of the note in question?"

Upon an affirmative answer to said issue the court rendered judgment that plaintiff take nothing, and he has appealed.

### Opinion.

Plaintiff presents thirty-three assignments of error and four propositions thereunder in his brief.

His contentions therein being, as we understand them: (1) That the written contract and the oral contract being between the same parties and covering the same subject-matter, and the written contract being the final repository of the agreement, it should control; (2) that evidence of the oral contract was not admissible, it being in conflict with the written contract; (3) that the written contract not being ambiguous, and there being no pleading that any portion of the agreement was omitted or inserted through fraud, accident, or mistake, there was no issue for the jury to determine and the court should have construed the written contract; and (4) that defendants having relied upon the oral agreement as a defense, they could not enforce a waiver by plaintiff without showing that they had performed their part of said agreement.

Defendants counter with the contention that their defense was bottomed upon a distinct and separate oral agreement, which did not represent negotiations and preliminary conversation leading up to the written agreement, but that the written agreement, as pleaded by them, was a further agreement; that the oral agreement constituted a part of the consideration for the written agreement, and being specific and clear as to a matter respecting which the written agreement was not clear, evidence of the oral agreement was admissible; that the oral agreement being a part of the consideration for the written agreement and in no wise contrary to or inconsistent with it, evidence of it was properly admitted; and that since the written agreement was not specific in its terms as to the foreclosure, and since the prior oral agreement was definite and certain as to that feature of the agreement between the parties, and was not inconsistent with the provisions of the written agreement, evidence thereof was admissible without any allegation of fraud, accident, or mistake.

In approaching the questions here presented, we should first reach a decision as to whether there were two separate agreements, to wit, one parol and the other written, or whether the contract between the parties rested partly in parol and partly in writing. Naturally if there were two separate agreements entered into, then evidence of the parol agreement could be admitted to prove that agreement, and if the agreement was partly oral and partly written, parol evidence of the oral part would be admissible, provided it is not found to be inconsistent with the written part. 17 Tex. Jur. § 366, p. 817.

From an examination of the record we have reached the conclusion that there were not two separate agreements as alleged by defendants.

It appears that the parties met in the courtroom of the 101st district court not earlier than 2 o'clock in the afternoon of December 2d, and that the injunction was dissolved at 3:40 p. m. of that same afternoon.

The purpose, clearly, of that meeting was to discuss the question of having the injunc-

tion dissolved in order that the sale might proceed as advertised.

It appears from defendant's own witnesses that the receiver was anxious to delay the sale for a while in order that he might effect some trades he had in mind by which he thought he might realize more out of the property than plaintiff's lien amounted to, and thereby save for the creditors and stockholders of the company the surplus. At most, it appears to us, there was one negotiation and one agreement, part of which was oral and part reduced to writing.

■ Contracts may be entered into resting partly in parol and partly in writing, and the oral part may be shown by parol provided it is not inconsistent with the part reduced to writing. 17 Tex. Jur. § 366, p. 817, and cases cited.

Therefore, in view of our conclusion as to what the record shows, the next question will be: Is there a conflict between the oral and written parts of the agreement here?

■ According to the oral part plaintiff agreed that, if permitted to make the foreclosure sale, he would accept the price obtained at such sale in complete accord, satisfaction, acquittance, and release of the note; yet, we find in the written agreement provisions to the effect that any deed given by virtue of such sale should be withheld from the record for almost two months, that the receiver should remain in possession and have full and complete control thereof until such later date, that said receiver should have the right to sell the property for any amount approved by the court, and that in case of a sale by the receiver, plaintiff would surrender the trustee's deed to him, and, if requested, execute a quitclaim deed to the property.

It is clear, we think, that the oral agreement proved is in conflict with the above provisions.

We fail to see how, if plaintiff was to receive the proceeds of the sale in full satisfaction of his claim on the note, he would be at liberty to make the sale with the restrictions placed upon him by the written agreement, and how he could effect a sale of the property on December 2d, when the receiver was authorized to make a sale of the same property between that time and January 26th, following.

The provision that, in case of sale by the receiver, plaintiff was obligated to surrender the unrecorded trustee's deed to him and execute a quitclaim deed to him, was a further restriction upon the sale which is, we think, inconsistent with the idea that plaintiff was to accept the proceeds derived from the sale of the property in lieu of his claim on the note, for such provision would have

the effect of limiting the sale to only the plaintiff himself. It therefore follows that the evidence of the oral part of the agreement was improperly admitted.

We will not reverse and here render as appellant requests. The record suggests that under proper pleadings the case may be brought within the recognized exception to the parol evidence rule in cases of mutual mistake.

Reversed and remanded.